IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Angela Schofield,

      Plaintiff,

      v.                        Case No. 2:16-cv-371

Nationwide Insurance Companies
and Affiliates Plan for Your
Time and Disability Income
Benefits,

      Defendant.

OPINION AND ORDER

    This is an action filed by Angela Schofield, a former employee
of Nationwide Mutual Insurance Company ("Nationwide"), pursuant to
the Employee Retirement Income Security Act of 1974 ("ERISA"), 29
U.S.C. §1132(a)(1)(b). Plaintiff seeks payment of long-term
disability ("LTD") benefits under the terms of the Nationwide
Insurance Companies and Affiliates Plan for Your Time and
Disability Income Benefits ("the Plan"). Nationwide is the sponsor
of the Plan. Administrative Record ("AR") 343, Plan §1.55. The
Plan administrator is the Benefits Administrative Committee ("the
Committee"). AR 343, Plan §1.54. The members of the Committee
are appointed by Nationwide's board of directors. AR 338, Plan
§1.12. Aetna is the claims administrator. This matter is now
before the court on the cross-motions of the parties for judgment
on the administrative record.

I. History of the Case

A. Plan Provisions Regarding LTD Benefits

    The Plan provides for both short-term and long-term disability
benefits. In regard to long-term disability ("LTD") benefits,

§4.03.02 of the Plan provides:

> (a) To commence Basic LTD Income Benefits, an Active
>     Associate must present evidence to the satisfaction of the Plan A
>
> (1) that the Active Associate's LTD Disability is the
>     direct and proximate result of an Illness or
>     Injury;
>
> (2) that, as of the Active Associate's Date of
>     Disability, there is a demonstrated, substantial
>     change in medical or physical condition as the
>     result of a specific physical injury or the
>     specific onset of a physical or mental illness,
>     demonstrated by new, significantly increased
>     physical or mental impairments such as a
>     significant loss of physical functional capacity;
>     and
>
> (3) that her LTD Disability is an Eligible Disability.

AR 362, Plan §4.03.02.  The Plan, §1.39, further provides:

> "LTD Disability" or "LTD Disabled" means a disability or
> disablement that results from a substantial change in
> medical or physical condition as a result of Injury or
> Illness and that prevents an Active Associate from
> engaging in Substantial Gainful Employment for which she
> is, or may become, qualified.... A substantial change in
> medical or physical condition may be evidenced by the
> change or loss of at least one of the Activities of Daily
> Living.

AR 342-43, Plan §1.39.  "'Activities of Daily Living' means normal
daily activities including, but not limited to, bathing, dressing,
eating and  using the toilet."  AR 337, Plan §1.03.  "'Substantial
Gainful Employment' means: For Active Associates, any occupation or
employment from which an individual may receive an income equal to
or greater than one-half of such individual's Covered Compensation
as of her Date of Disability."  AR 344, Plan §1.63.  It is the
responsibility of the employee to provide the claims administrator
with documentation supporting a claim for LTD benefits.  AR 375,

2

Plan §8.02.02(b).

The Plan provides for two levels of appeal from the claim administrator's denial of a claim for LTD benefits. AR 377, Plan §8.02.05(a). The first level of appeal is to the claims administrator. AR 377-78, Plan §8.02.05.01. The appeal determination is made by an individual who did not make the initial adverse benefit determination, and no deference is accorded the initial determination. Plan §8.02.05.01 (f). When the appeal is based in whole or in part on a medical judgment, the claims administrator handling the appeal "shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment" and who was not consulted in connection with the initial adverse determination. Plan §8.02.05.01(g) and (I).

The second level of appeal is to the plan administrator (the Committee). AR 378, Plan §8.02.05.02. The Plan provides:

> If the appeal is related to clinical matters, the review will be done in consultation with a health care professional with appropriate expertise in the medical field and who was not involved in the prior determination. The Plan Administrator may consult with or seek the participation of medical experts as part of the appeal resolution process.

Plan §8.02.05.02(a).

B. Plaintiff's Application for LTD Benefits

Plaintiff was previously employed by Nationwide as an IT Specialist. Plaintiff's last day of work was July 14, 2014. Plaintiff took a medical leave of absence due to pain in her left arm, which was attributed to the removal of veins from that arm for grafting during a 2012 coronary artery bypass surgery. After receiving short-term disability benefits, plaintiff applied for LTD

3

benefits.

In considering plaintiff's claim, Aetna reviewed the records of plaintiff's primary care physician, Dr. Nancy Graesser, D.O., and Dr. Brandon Thompson, M.D., a specialist in physical medicine and rehabilitation. Aetna also obtained a review of plaintiff's medical records by an independent medical examiner, Dr. Elena Antonelli, M.D., who is board certified in preventive and occupational medicine. Dr. Antonelli provided a report dated February 10, 2015, expressing the opinion that plaintiff's medical records did not support a finding of impairment or functional restrictions which would preclude plaintiff from engaging in any occupation. AR 51. Dr. Antonelli then had a peer review discussion with Dr. Graesser, who indicated that plaintiff was unable to perform her IT job due to the pain in her arm, which would preclude her from typing, and because her medication (Gabapentin) makes her very drowsy. Dr. Antonelli issued a supplemental report on March 11, 2015. AR 67. Dr. Antonelli concluded that the additional information from Dr. Graesser did not change her opinion. AR 68.

In a letter dated March 18, 2015, Aetna notified plaintiff that her claim for disability benefits was denied. AR 128. The letter summarized the medical records received from Dr. Graesser and Dr. Thompson. The letter also addressed the peer review conference of Dr. Graesser and Dr. Antonelli. Aetna noted that Dr. Graesser addressed plaintiff's ability to perform her current IT job, but that the issue being determined was not plaintiff's ability to perform that job, but rather her ability to perform the duties of any occupation. Aetna concluded that the information

4

provided was not sufficient to support plaintiff's impairment from any reasonable occupation.  AR 129.

C. First Level Appeal

Following the denial of benefits, plaintiff retained counsel, who sent an appeal letter to Aetna dated April 16, 2015.  AR 138. During the appeal, Aetna reviewed treatment records from Dr. Graesser and Dr. Thompson, as well as records from Dr. Carolyn Neltner, a neurosurgeon, and a physical capacity evaluation completed by Laura Miller, a physical therapist.  Aetna also obtained a review of plaintiff's medical records by an independent consultant, Dr. Malcolm McPhee, M.D., who is board certified in physical medicine and rehabilitation.  In a report dated June 24, 2015, Dr. McPhee summarized the medical records, including Dr. Graesser's diagnosis of reflex sympathetic dystrophy ("RSD")[1], and described his peer review conferences with Dr. Graesser and Dr. Thompson.  AR 159-164.  Dr. McPhee noted that Dr. Thompson suggested complex regional pain syndrome ("CRPS") as a possible diagnosis for plaintiff's condition.  However, Dr. McPhee observed that no tests typically used to confirm a diagnosis of CRPS were performed, and that a majority of the symptoms and signs characteristic of CRPS were not reported by plaintiff's treating

_____

[1] RSD, also known as "complex regional pain syndrome," is a neurological condition that "typically follows an injury," and is characterized by various degrees of burning pain, excessive sweating, swelling, and sensitivity to touch.  The Merck Manual of Diagnosis and Therapy 1633-34 (Robert S. Porter et al. eds., 19th ed. 2011); see also Ross v. American Red Cross, 567 F. App'x 296, 300 n. 4 (6th Cir. 2014)(complex regional pain syndrome is an uncommon form of chronic pain that usually affects an arm or leg; it can develop after an injury or surgery, but the pain is out of proportion to the severity of the initial injury).

physicians. AR 164. Dr. McPhee also noted that Dr. Thompson indicated that if drowsiness was reported as a side effect of using Gabapentin, the next step would be to adjust the doses given and to consider alternative medication. Dr. McPhee reported that the physical capacity study showed no abnormality of the dominant right upper extremity, and that, although there was some self-limited left hand function due to pain, this was not severe enough to preclude work activity with restrictions. AR 165.

By letter dated July 30, 2015, Aetna advised plaintiff's counsel that plaintiff's appeal was denied. AR 169-172. The letter included a detailed summary of plaintiff's medical records. It was noted that tests were not performed to substantiate a diagnosis of CRPS and that there was no evidence to support a total lack of functional capacity. AR 171. Aetna further observed that although Laura Miller, the physical therapist, indicated in her physical capacity evaluation, AR 131-135, that plaintiff could only function at less-than-sedentary strength levels for one hour at a time, she offered no opinion concerning plaintiff's level of impairment while taking medication (plaintiff did not take her pain medication the day of the evaluation). Dr. Graesser's opinion that plaintiff was unable to work was rejected as not being supported by the examination findings of plaintiff's other treating physicians. AR 171. Aetna concluded that although plaintiff had limited use of her left upper extremity, "we do not find that she is incapable of engaging in substantial gainful employment." AR 171-72. The letter also noted that a vocational assessment was completed to review plaintiff's work and education history and her transferable skills, and the assessment identified an alternative occupation,

6

that of project director, <u>Dictionary of Occupational Titles</u> number 189.117-030, which would provide plaintiff access to substantial gainful employment.  AR 172.

D. Second Level Appeal

By letter dated August 3, 2015, plaintiff's counsel notified Aetna Nationwide Appeals of plaintiff's intent to appeal the decision to the Committee.  AR 174-75.  During the appeal, the Committee reviewed the appeal letter and Aetna's claim file.  The Committee also arranged for an independent medical exam, which was completed by Dr. Steven S. Wunder, M.D., who is board certified in physical medicine and rehabilitation.  In a report dated March 5, 2016, Dr. Wunder summarized the results of his physical examination of plaintiff, and also described the medical records which he reviewed.  AR 5-9.  Dr. Wunder found that plaintiff did not meet the criteria for the previous diagnoses of CRPS/RSD.  AR 9.  He also concluded that there was "no evidence of contraindication to working eight hours a day, five to seven days a week."  AR 9.  By letter dated March 24, 2016, plaintiff's counsel was advised that, after reviewing and considering all of the information in the administrative record, the Committee affirmed the denial of LTD benefits.  AR 1-3.  Plaintiff then filed the instant action.

II. Standard of Review

A. Applicable Standard of Review

A plan administrator's denial of benefits is reviewed de novo unless the benefit plan specifically gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan.  <u>Morrison v. Marsh & McLennan Companies, Inc.</u>, 439 F.3d 295, 300 (6th Cir. 2006).  Where an ERISA

plan gives the plan administrator such discretionary authority, the administrator's decision is reviewed under the arbitrary and capricious standard.  <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 111 (1989).

The Plan, at §9.02, provides:

> (a)  The Plan Administrator has the authority, power, and discretion to construe and interpret the provisions of the Plan and to decide all questions as to eligibility to participate.  Any such determination will be conclusive and binding upon all persons having an interest in or under the Plan;

> (b)  The Plan Administrator has the authority to determine the Payment of Plan benefits.  The Plan Administrator will pay Plan benefits only if it decides in its discretion that the Claimant is entitled to the benefits[.]

AR 380, Plan §9.02(a) and (b).  The court finds that the arbitrary and capricious standard of review applies in this case.

<u>B. Conflict of Interest</u>

Plaintiff contends that a conflict of interest exists in this case which should be considered in reviewing the denial of benefits.  In applying the arbitrary and capricious standard, a court will weigh as a factor whether a conflict of interest existed on the part of the decision-maker in determining whether there was an abuse of discretion.  <u>Metropolitan Life Ins. Co. v. Glenn</u>, 554 U.S. 105, 115 (2008); <u>Bennett v. Kemper Nat'l Servs., Inc.</u>, 514 F.3d 547, 552-53 (6th Cir. 2008).  However, "mere allegations of the existence of a structural conflict of interest are not enough to show that the denial of a claim was arbitrary[.]"  <u>Peruzzi v. Summa Medical Plan</u>, 137 F.3d 431, 433 (6th Cir. 1998).  Sixth Circuit caselaw "requires a plaintiff not only to show the

purported existence of a conflict of interest, but also to provide 'significant evidence' that the conflict actually affected or motivated the decision at issue." <u>Cooper v. Life ins. Co. of N. Am.</u>, 486 F.3d 157, 165 (6th Cir. 2007)(quoting <u>Peruzzi</u>, 137 F.3d at 433).

Plaintiff argues that a structural conflict of interest exists because Nationwide is the Plan administrator and is the payor of benefits. However, under the terms of the Plan, Nationwide is the Plan sponsor, not the Plan administrator. AR 343, Plan §§1.54 and 1.55. The Plan is financed primarily by employee contributions; Nationwide is only required to make contributions to the Plan when there is a shortfall of funds necessary to pay benefits. AR 388, Plan §§12.01, 12.03. This lessens the potential for any conflict of interest due to any motivation on Nationwide's part to restrict the payment of benefits. In addition, Nationwide is removed from the decision-making process, because it is the Committee, as Plan administrator, which has the ultimate say at the second appeal level as to whether benefits will be awarded. <u>See</u> AR 343, Plan §1.54; AR 378, Plan §8.02.05.02. There is no evidence that Nationwide exerted any pressure on the Committee members to deny benefits. The Committee members receive no compensation for their services. AR 380, Plan §9.01(d). There is no evidence that they have any financial incentive to deny benefits.

The record contains no evidence of a Plan history of biased claims administration. The Plan's two levels of appeal, each featuring review by an individual who did not make the initial adverse benefit determination, militate against a finding that the

9

claims process was tainted by any predisposition to deny the claim. <u>See</u> AR 377-78, Plan §§8.02.05.01 and 8.02.05.02. The Plan's consultation with three independent medical experts, as well as the fact that an independent medical exam was obtained, are additional factors which suggest that no conflict of interest affected or motivated the benefits decision in this case. The circumstances of this case and the lack of evidence of bias weigh against a finding of any conflict of interest on the part of Aetna, the Committee, or Nationwide.

<u>III. Denial of Continued LTD Benefits</u>

<u>A. Arbitrary and Capricious Standard of Review</u>

In reviewing the decision to deny plaintiff's application for continued LTD benefits, this court applies the arbitrary and capricious standard of review. Review under the arbitrary and capricious standard is "extremely deferential." <u>McClain v. Eaton Corp. Disability Plan</u>, 740 F.3d 1059, 1064 (6th Cir. 2014). "Review under the arbitrary and capricious standard is the least demanding form of judicial review of an administrative action; it requires only an explanation based on substantial evidence that results from a deliberate and principled reasoning process." <u>Morrison</u>, 439 F.3d at 300; <u>see also</u> <u>Shields v. Reader's Digest Ass'n, Inc.</u>, 331 F.3d 536, 541 (6th Cir. 2003)("When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious."); <u>Williams v. International Paper Co.</u>, 227 F.3d 706, 712 (6th Cir. 2000)(if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision is neither arbitrary nor capricious). This is true

regardless of whether an equally rational interpretation is offered by the plan participant.  Gismondi v. United Techs. Corp., 408 F.3d 295, 298 (6th Cir. 2005).  "The arbitrary and capricious standard requires courts to review the plan provisions and the record evidence and determine if the administrator's decision was 'rational.'"  Schwalm v. Guardian Life Ins. Co. of America, 626 F.3d 299, 308 (6th Cir. 2010).

B. Decision to Deny Benefits

The Plan argues that the decision to deny plaintiff's claim for LTD benefits was not arbitrary and capricious, particularly because the Plan relied on the medical analysis and opinions of three independent experts and the results of an independent medical examination in concluding that the record did not support a finding that plaintiff was disabled from engaging in substantial gainful employment.

In considering plaintiff's claim for LTD benefits, Aetna, the Plan claims administrator, obtained a review of plaintiff's medical records by Dr. Elena Antonelli, an independent medical examiner specializing in preventive and occupational medicine.  In her report, Dr. Antonelli noted the statement of Dr. Nancy Graesser, plaintiff's primary care physician, that plaintiff has cervical spinal stenosis and coronary artery disease, and that she was unable to work due to persistent pain with any movement of her left arm.[2]  AR 54.  Dr. Antonelli reviewed plaintiff's medical records

---

[2] The record includes records concerning plaintiff's bypass surgery in 2012.  See AR 53.  However, there is no evidence in the administrative record that plaintiff is unable to work due to coronary artery disease.  Dr. Antonelli also reviewed letters regarding plaintiff's consultations in January, 2014, with Dr. Carolyn Neltner, a neurologist who reviewed the results of a

and opined that the records did not support plaintiff's impairment
from any occupation. AR 53-55. She adhered to her original
opinion after a peer review consultation with Dr. Graesser. AR 68.

In the March 18, 2015, letter denying plaintiff's claim, Aetna
referred to the medical records submitted by plaintiff as well as
Dr. Antonelli's report. AR 128-129. Aetna concluded that the
medical records, including the records of plaintiff's physicians,
Dr. Graesser and Dr. Brandon Thompson, did not provide sufficient
information "to support any type of impairment that would prevent
[plaintiff] from performing the duties of any reasonable occupation
from a physical perspective." AR 129.

In considering plaintiff's appeal, Aetna arranged for a review
of the file by an independent expert, Dr. Malcolm McPhee, M.D., a
specialist in physical medicine and rehabilitation. In his June
24, 2015, report, Dr. McPhee summarized the medical records in
detail, and conducted peer review conversations with Drs. Graesser
and Thompson. AR 159-164. Dr. McPhee indicated that plaintiff's
history of coronary artery disease would not preclude work activity
at a sedentary level. AR 164. Dr. McPhee disagreed with Dr.
Thompson's diagnosis of CRPS as a possible cause of plaintiff's
condition, noting that no tests typically used to confirm a
diagnosis of CRPS were performed, and that a majority of the
symptoms and signs characteristic of CRPS were not reported by

---

November, 2013, MRI exam of plaintiff's cervical spine to determine
if there were any problems there which could be contributing to
plaintiff's left arm pain. AR 53. Dr. Neltner noted that
plaintiff's "cervical pathology is relatively minor and I do not
feel that it warrants any neurosurgical intervention. I also do
not feel that it is the etiology of her left arm symptoms." AR
125.

plaintiff's treating physicians.  AR 164.  He concluded that the minimal findings and lack of chronic features would be insufficient to expect severe pain attributable to CRPS.  AR 165.  Dr. McPhee also concluded that the March 24, 2015, physical capacity exam completed by Laura Miller, a physical therapist, see AR 131-135, showed no abnormality of the dominant right upper extremities and "some self-limited left hand function due to pain report although not severe enough to preclude work activity with restrictions."  AR 165.  Dr. McPhee concluded that reasonable restrictions in plaintiff's case would be:

> lift/carry 10 pounds occasionally and less than 10 pounds frequently, stand/walk could be performed occasionally, sitting would be unrestricted with change of position for 5 minutes every hour in addition to usual rest breaks, crouch/squat could be on an occasional basis and right hand use would be unrestricted. The left hand activities would be restricted to less than 10 pounds grip and assist the right hand primarily when two[-]handed activities needed.

AR 165.

In the July 30, 2015, letter denying plaintiff's appeal, Aetna summarized plaintiff's medical records in detail.  AR 169-171. Aetna also referred to information from Dr. McPhee's report concerning his disagreement with the CRPS diagnosis and his conclusions regarding plaintiff's level of functioning.  Aetna concluded that Dr. Graesser's opinion that plaintiff is unable to work "is not supported by the examination findings of her other treating physicians."  AR 171.  The decision letter further stated: "Although we agree with Dr. Graesser that Ms. Schofield has limited use of her left upper extremity, we do not find that she is incapable of engaging in substantial gainful employment."  AR 171-

13

172.  The letter also referred to a vocational assessment which identified the occupation of Project Director as being a job which plaintiff could perform.  AR 172.

In considering plaintiff's second level appeal, the Committee reviewed Aetna's file and obtained a records review and independent medical examination by Dr. Steven Wunder, M.D., a specialist in physical medicine and rehabilitation.  In a report dated March 5, 2016, Dr. Wunder described the observations he made during plaintiff's physical exam and also summarized the medical records he reviewed.  AR 105-109.  The history he took from plaintiff is as follows:

> Currently she reported after nearly four years she feels about the same.  Her pain symptoms are constant.  With medication she rates it as a 3-4.  Without medicine it is an 8.  The only thing that has helped is the medication. She feels worse with activity or use.  She has no restrictions at all with the right upper extremity, either lower extremity, back or neck.  She can sit, stand, and walk without any restrictions.  She only feels worse with activity or use of the left arm such as lifting.  She indicated they told her she could use her arm as tolerated and she could use it for cleaning, etc. She is independent with activities of daily living such as bathing, dressing, and personal hygiene.  If she uses both upper extremities, she thinks she can only lift 10 lb.  Her daily activities consist of light housework. She is able to load the dishwasher.  She showers every other day, because the water hitting her arm can cause increased pain.  She takes a nap due to the [G]abapentin. She reads a lot.  She is able to drive.
>
> Her job was primarily clerical and desk work.  She was an IT specialist project manager.  She last worked on July 6, 2014.  She indicates she did timekeeping, work distribution, and managed projects.  There was some typing.  She did carry a laptop.

AR 5-6.

As to his physical examination of plaintiff, Dr. Wunder noted:

She ambulated normally.  There is no antalgia.

She had no tenderness to palpation in the lower back.

She had mildly restricted lumbar mobility but no complaints of pain with it.

Her lower extremity motor, sensory and reflex exam was normal.

Straight leg raise and sciatic stretch movements were normal.

Range of motion of the hips, knees, and ankles was normal.  She had mild complaint of pain with range of motion of the left ankle and indicated she has had several sprains.  There is no instability.  There is no atrophy.

Inspection of the cervical spine revealed no abnormal postural curves.  She had full range of motion of the cervical spine, and there is no pain with it.  She reported to me that they told her she had a disc herniation in her neck, and occasionally she will get a headache but does not report any radicular symptoms.

Range of motion of the shoulders, elbows, wrists, and small digits was normal.  In her left shoulder, she complained of mild pain with range of motion. Impingement testing was mildly positive.  Drop-arm test was negative.  Speed test was negative.  O'Brien compression test was negative.

Her upper extremity reflexes were 2+. Her motor strength is normal.  Sensation was normal on the right side.  On the left side, she had some hypersensitivity in a superficial radial distribution.  There is no numbness.

She had a 20-cm scar over the flexor surface of the forearm.  She complained of some tenderness along the incisional area.

She had no vasomotor changes.  The skin was not mottled or cyanotic.  The skin temperature was not cool.  There was no edema.  The skin appeared normal, and it was not overly dry or overly moist.  Skin texture was normal. There was no soft tissue atrophy.  There is no joint stiffness or diminished passive motion.  There are no

nail changes or hair growth changes.

There were no volumetric changes.  Wrist circumferences were equal and symmetric at 14.5 cm, and forearm circumferences were 25 cm.

She reported she was right-hand dominant.

She lifts 40 lb, 25 lb, and 30 lb on the right and 10 lb, 25 lb, and 5 lb on the left.  She failed evaluation criteria on the left side.

AR 6-7.

Dr. Wunder completed a capabilities and limitations form indicating that plaintiff had no restrictions except in the category of heavy weight lifting.  AR 4.  He concluded that plaintiff was capable of working eight hours a day, five to seven days a week.  AR 9.  Dr. Wunder reported that plaintiff's subjective complaints were not supported by objective findings, that there were no objective abnormalities present on exam, and that, although plaintiff may have some mild localized neuropathic pain from an incomplete radial sensory neuropathy, she did not meet the criteria for a diagnosis of CRPS/RSD.  AR 9.

In the March 24, 2016, decision letter, the Committee indicated that it had reviewed all of the information in the administrative record and referred specifically to Dr. Wunder's report.  AR 2-3.  The Committee determined that plaintiff did not meet the definition of LTD Disabled and upheld Aetna's denial of benefits as being supported by the administrative record.  AR 3.

C. Plaintiff's Arguments

1. Consideration of Plaintiff's Pain and Drowsiness

Plaintiff argues that the independent expert opinions and the Plan's decisions ignored plaintiff's pain and the high doses of

Gabapentin she takes, which causes drowsiness.  The administrative
record reveals otherwise.  <u>See</u> Report of Dr. Antonelli, AR 52-54
(noting plaintiff's complaints of pain and drowsiness to Drs.
Graesser and Thompson); Aetna March 18, 2015, Letter, AR 128-129
(noting review of treatment notes from Drs. Graesser and Thompson
documenting complaints of persistent left arm pain and side effects
of medication); Report of Dr. McPhee, AR 161-163 (summarizing
medical records from Drs. Graesser, Thompson, and Neltner,
documenting plaintiff's complaints of left arm pain and drowsiness
with medication); Aetna July 30, 2015, Letter, AR 170-171 (noting
medical records reporting complaints of persistent pain and side
effects of medication); Report of Dr. Wunder, AR 5-8 (discussing
plaintiff's reports of complaints of constant pain in her left arm
and the need to take a nap due to taking Gabapentin, as well as
references to pain in her medical records, but concluding that
although plaintiff "may have some mild localized neuropathic pain
from an incomplete radial sensory neuropathy ... she does not meet
[the] criteria for the diagnosis of CRPS/RSD").  The Plan and the
independent experts did not ignore plaintiff's complaints of pain.
Rather, they considered this evidence but concluded that it was not
sufficient to support a finding of LTD disability.  The fact that
the Plan accepted the opinions of the three independent medical
consultants instead of the opinions of plaintiff's physicians,
particularly Dr. Graesser, on the issue of whether plaintiff's pain
is debilitating was not arbitrary and capricious.  <u>See</u> <u>McDonald v.</u>
<u>Western-Southern Life Ins. Co.</u>, 347 F.3d 161, 169 (6th Cir.
2003)(decision to deny benefits is not arbitrary and capricious
because the plan relied on the opinion of one doctor over the
opinion of another).

## 2. Consideration Treating Physician Opinions

Plaintiff further argues that the Plan acted arbitrarily and capriciously in rejecting the opinion of her treating physician, Dr. Graesser, that she was unable to work, without offering any explanations for discounting her allegedly disabling pain.  In Black and Decker Disability Plan v. Nord, 538 U.S. 822 (2003), the Supreme Court noted that neither ERISA's statutory provisions nor the ERISA regulations promulgated by the Secretary of Labor adopted a treating physician rule.  Id. at 831-832.  A plan administrator may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.  Id. at 834.  However, the Court held that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  Id. at 834.  Reliance on other physicians is reasonable so long as the administrator does not totally ignore the treating physician's opinions.  Balmert v. Reliance Standard Life Ins. Co., 601 F.3d 497, 504 (6th Cir. 2010).

Plaintiff relies on Evans v. UnumProvident Corp., 434 F.3d 866, 879-80 (6th Cir. 2006).  In that case, the Sixth Circuit found that the denial of benefits was arbitrary and capricious where the plan ignored the reliable opinion of the claimant's treating neurologist that claimant's high-stress position as a nursing home administrator exacerbated her seizure condition, as well as other evidence which established the high-stress nature of her job.  Cases cited in Evans describe other scenarios which were held to constitute arbitrary and capricious decisions.

18

In McDonald, 347 F.3d at 170-71, the court reversed the plan administrator's decision where claimant's treating physicians opined that he was unable to return to work, two independent medical examiners questioned his ability to return to work, and a psychiatrist's supplement report which indicated that claimant was malingering differed significantly from his initial report. In Moon v. Unum Provident Corp., 405 F.3d 373, 381-82 (6th Cir. 2005), the administrator's denial of benefits was arbitrary and capricious where plaintiff's primary physician carefully documented plaintiff's condition and stated she was unable to return to work, and the only contrary opinion came from defendant's in-house staff physician based only his selective records review. In Calvert v. Firstar Fin., Inc., 409 F.3d 286, 296-97 (6th Cir. 2005), the court found that a neurosurgeon's file review was inadequate compared to objective data from claimant's x-rays and CT scans and objectively verifiable disability determinations by the Social Security Administration and claimant's treating physician. In Kalish v. Liberty Mut./Liberty Life Assur. Co. of Boston, 419 F.3d 501- 509-10 (6th Cir. 2005), the plan administrator relied exclusively on an expert who only reviewed the claim file, and who failed to rebut contrary medical conclusions by a treating physician and the observations of the plan's own field investigator.

The circumstances in the instant case are easily distinguished. Here, the Plan and the independent experts addressed the records of plaintiff's treating physicians and considered their opinions. Although specific explanations were not required under Nord, the independent experts and Aetna also provided sufficient reasons why they did not agree with the opinions of plaintiff's treating physicians. Dr. Antonelli noted

19

that "Dr. Graesser has not provided any clinical information as to the claimant's inability to work based on clinical findings and these limitations appear to be based primarily on her history of several medical conditions." AR 55. Dr. Antonelli also observed that when plaintiff saw Dr. Thompson on September 30, 2014, she stated that she was much better, that her pain averaged 3-4/10, and that the Gabapentin dose was adjusted. AR 54-55. Following her peer review consultation with Dr. Graesser, Dr. Antonelli noted that Dr. Graesser stated that plaintiff could not perform her current IT job due to arm pain and drowsiness from Gabapentin, but that Dr. Graesser did not provide any clinical information as to the claimant's inability to work. AR 68, March 11, 2015, Supplemental Report. Aetna later noted in the denial letter that the relevant issue was plaintiff's ability to perform the duties of any occupation, not the duties of plaintiff's IT job. AR 129. Aetna concluded that the documents and medical records provided by Drs. Graesser and Thompson were not sufficient to support plaintiff's impairment from any reasonable occupation. AR 129.

At the first appeal level, Dr. McPhee discussed at length why he disagreed with the diagnosis of CRPS, noting that the majority of symptoms typical of this condition were not present, and that tests typically used to confirm this diagnosis were not performed. AR 164-165. He also discussed the issue of drowsiness as a side effect of Gabapentin with Dr. Thompson, who stated that adjustments in the amount and timing of doses could be made, and alternative medication could be considered. AR 164-165. In disagreeing with a finding of disability, Dr. McPhee also relied on the physical capacity study performed by Laura Miller, which he concluded showed no abnormality of the dominant right upper extremities "and some

20

self-limited left hand function due to pain report although not
severe enough to preclude work activity with restrictions." AR
165.

Aetna relied on Dr. McPhee's report in concluding that the
usual symptoms indicative of CRPS were not present in plaintiff's
case. AR 171. Aetna acknowledged plaintiff's persistent
complaints of pain but found "no evidence to support a total lack
of functional capacity." AR 171. Aetna also noted that Laura
Miller completed the physical capacity evaluation on a day when
plaintiff had not taken her pain medication, and that she offered
no opinion as to the levels of plaintiff's impairment while taking
medication. AR 171. Aetna relied on Dr. Thompson's statement that
the next step to take in the event of drowsiness was to adjust the
medication levels. Aetna explained that Dr. Graesser's opinion
that plaintiff is unable to perform gainful activity "is not
supported by the examination findings of her other treating
physicians." AR 171. Aetna also stated that although it "agreed
with Dr. Graesser that Ms. Schofield has limited use of her left
upper extremity, we do not find that she is incapable of engaging
in substantial gainful employment." AR 171-172.

Dr. Wunder referred to Dr. Graesser's records documenting
plaintiff's complaints of pain, but noted that there were no
objective findings in those records. AR 8. Dr. Wunder commented
that the EMG and nerve conduction studies did not support a
diagnosis of cervical radiculopathy. AR 8. Dr. Wunder stated that
plaintiff's subjective complaints were not supported by objective
findings, and that there were no objective abnormalities noted
during his examination of the plaintiff. He also noted that
plaintiff did not meet the criteria for a diagnosis of CRPS/RSD.

21

AR 9.

The March 23, 2016, decision letter of the Committee stated
that the Committee had reviewed Aetna's claim file and the results
of the independent medical examination.  AR 2.  The letter noted
that Dr. Wunder did not "find any evidence of contraindication to
working eight hours a day, five to seven days a week.  The letter
also noted that the Committee "upheld Aetna's decision" as being
"supported by the administrative record."  Although the letter did
not specifically discuss the documents in the administrative
record, the Committee implicitly adopted the thorough reasoning
contained in Aetna's decision letters by upholding Aetna's
decision.  The Plan provided adequate reasons for discounting the
disability opinions of plaintiff's treating physicians, and did not
act arbitrarily and capriciously in doing so.

3. References to Lack of Objective Evidence

Plaintiff also argues that the Plan impermissibly required
only objective evidence as proof of disability, and that the
references by Aetna and the independent experts to the lack of
objective evidence imposed an additional burden on her, not found
in the Plan, to prove disability.  However, the Plan letters and
the reports of the independent experts indicate that all medical
documents in the administrative record were considered, including
those describing plaintiff's subjective complaints of pain, and
that the Plan did not focus solely on objective evidence or the
lack thereof.

As to the references to the lack of objective or clinical
evidence, the Sixth Circuit has noted that "'[r]equiring a claimant
to provide objective medical evidence of disability is not
irrational or unreasonable,' even when such a requirement does not

22

appear among the plan terms." Hunt v. Metropolitan Life Ins. Co.,
587 F. App'x 860, 862 (6th Cir. 2014)(quoting Cooper, 486 F.3d at
166); Judge v. Metropolitan Life Ins. Co., 710 F.3d 651, 660-61
(6th Cir. 2013)(insurer's conclusion that no objective evidence
supported physicians' opinions was not arbitrary or capricious).

In this case, Dr. Antonelli stated that "Dr. Graesser has not
provided any clinical information as to the claimant's inability to
work based on clinical findings and these limitations appear to be
based primarily on her history of several medical conditions." AR
55. Aetna explained that Dr. Graesser's opinion that plaintiff is
unable to perform gainful activity "is not supported by the
examination findings of her other treating physicians." AR 171.
Dr. Wunder referred to Dr. Graesser's records of plaintiff's
complaint of pain, but noted that there were no objective findings
in those records. AR 8. Dr. Wunder stated that plaintiff's
subjective complaints were not supported by objective findings, and
that there were no objective abnormalities noted during his
examination of the plaintiff. AR 9.

These were valid observations which could be considered by the
Committee in determining the weight to be assigned to the opinions
of plaintiff's treating physicians, particularly since the Plan in
this case places the burden on plaintiff as the claimant to prove
LTD disability. See AR 362, Plan §4.03.02(a) and (c)("an Active
Associate must present evidence to the satisfaction of the Plan
Administrator of ... significantly increased physical or mental
impairments such as a significant loss of physical functional
capacity"). The Plan's consideration of the lack of objective
evidence was not arbitrary and capricious. See Oody v. Kimberly-
Clark Corp. Pension Plan, 215 F.App'x 447, 452-53 (6th Cir.

2007)(denial of total disability benefits was not arbitrary and capricious where committee reasonably found that the medical evidence submitted by claimant was not supported by objective evidence and was therefore insufficient to demonstrate he was permanently disabled within the meaning of the plan).

4. "Cherry-Picking" of Medical Evidence

Plaintiff further contends that the Plan engaged in "cherry-picking" the medical evidence, thereby denying her a fair review of her claim. "Cherry-picking" occurs where a plan focuses on certain parts of an administrative record while disregarding other reliable evidence. That did not occur here. A plan does not engage in "cherry-picking" where, as here, the Plan gave due consideration to the opinions of the claimant's doctors, and where the expert findings rejecting those opinions were reasonable in light of the bulk of the administrative record. See McClain, 740 F.3d at 1066.

Plaintiff argues that the Plan acted improperly by focusing in the July 30, 2015, denial letter on the physical capacity examination performed by Laura Miller by noting that the examination report provided no evidence regarding plaintiff's abilities when taking pain medication. See AR 171. This was not "cherry-picking." The fact that the evaluation was performed on a day when plaintiff had not taken any pain medication was relevant to the findings in the report. Plaintiff also complains about Aetna's reference to the September 30, 2014, record of Dr. Thompson, stating that plaintiff's pain was much better and averaged 3-4/10. AR 170-171. However, the Plan did not thereby focus on an isolated occasion where plaintiff was experiencing pain at that level. Plaintiff also rated her pain level at the start of the physical capacity examination on March 24, 2015, as being 4/10,

24

despite having taken no pain medication since the night before.  AR 131, 134.  Plaintiff also told Dr. Wunder on March 5, 2016, that she rated her pain with medication as 3-4.  AR 5.  Plaintiff further contends that Dr. Wunder engaged in "cherry-picking" by allegedly ignoring the opinions of Drs. Graesser and Thompson about her severe pain.  As noted above, Dr. Wunder did not ignore the records of these doctors; he summarized them in his report.  AR 7-9.  His opinion was based on his review of all the medical reports in the administrative record and his own observations during his medical examination of the plaintiff.  The fact that Dr. Wunder ultimately disagreed with the conclusions of plaintiff's treating physicians regarding the allegedly disabling nature of her pain is not sufficient to show that he or the Plan "cherry-picked" the records.

The Plan provided plaintiff with a fair review procedure.  The Plan provided for not one, but two levels of appeal.  Plaintiff's records were reviewed by three independent experts in occupational or rehabilitative medicine.  The Committee even went a step beyond the requirement that it "consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment," <u>see</u> 29 C.F.R. §§2560.503-1(h)(3)(iii) and (h)(4), by arranging for an independent medical examination of the plaintiff by Dr. Wunder.  The independent experts acknowledged the opinions of Drs. Graesser and Thompson and their treatment of plaintiff for chronic pain, but reasonably concluded that the diagnoses of a disabling condition and CRPS/RSD were not supported by clinical or objective evidence.

IV. Conclusion

The ultimate issue in an ERISA denial of benefits case is not

whether discrete acts by the plan administrator are arbitrary and capricious, but whether its ultimate decision denying benefits was arbitrary and capricious, as determined from a review of the whole of the administrative record. McClain, 740 F.3d at 1066.  After reviewing the administrative record, the court concludes that the Plan did not act arbitrarily and capriciously in determining that the plaintiff was not "LTD Disabled" and that she did not qualify for LTD benefits under the Plan.  The Plan provided a rational and reasonable explanation for that decision, which resulted from a deliberate and principled reasoning process and which was based on substantial evidence. See Schwalm, 626 F.3d 299 at 308; Morrison, 439 F.3d at 300; Williams, 227 F.3d at 712.  In accordance with the foregoing, plaintiff's motion for judgment on the administrative record (Doc. 7) is denied.  Defendant's motion for judgment on the administrative record (Doc. 8) is granted.  The clerk shall enter judgment in favor of defendant.


Date: February 14, 2017          s/James L. Graham
                                 James L. Graham
                                 United States District Judge